UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT D. HIGGINS, and <br> MARIANNA HIGGINS, <br>     Plaintiffs, <br> v. <br> CHASE MANHATTAN MORTGAGE <br> CORPORATION NKA <br> CHASE HOME FINANCE LLC <br>     Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 4:05-cv-2065-HEA<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL**

**INTRODUCTION**

Defendant Chase Manhattan Mortgage Corporation n/k/a Chase Home Finance LLC, ("CHF") respectfully moves this Court to disqualify Douglas McCloskey from further representation of the plaintiffs in this matter.  Disqualification is appropriate and necessary for two independent, but equally dispositive reasons:

- First, McCloskey has made repeated contact, both direct and indirect, with CHF, a party whom he knew was represented by counsel in contravention of Missouri Rule of Professional Conduct 4-4.2.

- Second, McCloskey is acting as an advocate in the present suit in which he is a necessary witness.  His continued representation of plaintiffs is thus prohibited by Missouri Rule of Professional Conduct 4-3.7.

**BACKGROUND**

On December 26, 2001, Chase Manhattan Mortgage Corporation ("CMMC") provided a $96,876.00 loan to plaintiffs Robert and Marianna Higgins ("the Higgins").  This loan was originally assigned number 1629035940 and subsequently reassigned number 0003506174 (the

"First Loan").  On or about December 17, 2003, the Higgins sued CMMC in an action styled *Robert D. Higgins and Marianna Higgins v. Chase Manhattan Mortgage Corporation*, in the St. Louis County Circuit Court, Division 5, Cause No. 03CC-005076 (the "Settled Lawsuit") for alleged violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq. ("RESPA") and related common law claims.  Douglas McCloskey represented the Higgins in the Settled Lawsuit.

In May 2004, the parties to the Settled Lawsuit negotiated its settlement.  On June 28, 2004, CMMC and the Higgins executed the Settlement Agreement and Mutual Release (the "Settlement Agreement") and closed the settlement.  Under the terms of the Settlement Agreement, CMMC agreed to refinance the First Loan, to make certain payments to the Higgins and to take other specified actions in exchange for the Higgins' agreement, among other things, to dismiss the Settled Lawsuit with prejudice and to release CMMC from and against any and all matters related to or arising out of the First Loan.  The Settlement Agreement, specifically provided that the Higgins would:

> hereby release, waive, and forever discharge CMMC, and their subsidiaries, divisions, affiliates, sureties, insurers, successors, predecessors, assigns, directors, officers, attorneys, shareholders, general and limited partners, members, agents, servants and employees, past and/or present, and any other person or entity who might claim by, through or under them, or any of them (collectively, the "CMMC Parties"), of, from and against all claims, liens, causes of action, losses, liabilities, damages (incidental, consequential or otherwise), costs or expenses (including but not limited to reasonable attorney's fees and court costs), known or unknown, suspected or unsuspected, contingent or liquidated, asserted or unasserted, which HIGGINS had, now have or in the future may have, against the CMMC Parties, arising from, related to or connected with the Lawsuit and any other matters or issues raised, or which could have been raised, in the Lawsuit.

McCloskey, counsel for plaintiffs in the Settled Lawsuit and the present matter, negotiated the settlement of the Settled Lawsuit on the Higgins' behalf, substantially participated in the drafting of the Settlement Agreement, and attended the closing and refinancing of the First Loan ("Closing").  The refinancing pursuant to the Settlement Agreement gave rise to a new loan, hereinafter referred to as the "Second Loan."  There were no direct communications between CMMC and the Higgins with respect to the Settled Lawsuit or the Settlement Agreement – all discussions flowed through McCloskey.[1/]

Beginning nearly immediately after the refinancing of the First Loan, McCloskey, as attorney for plaintiffs herein, improperly made both direct and indirect (through the Higgins) contact with CHF by telephone and/or by letter regarding the First Loan.  For example, on July 7, 2004, just days after the execution of the Settlement Agreement and the refinancing of the First Loan, Marianna Higgins, according to the plaintiffs' Complaint, sent a letter directly to CHF making inquiry as to issues related to the servicing of the First Loan. (Compl. Exh. A).  The July 7, 2004, letter was actually transmitted by Douglas McCloskey, as is evident from the registered mail receipt.  (<u>See</u> Id.).  Plaintiffs also sent letters to CHF on August 12, 2004, and December 15, 2004.[2/]  (<u>See</u> Compl. Exhs. B and C).  McCloskey himself sent a letter to CHF on February 4, 2005.  (<u>See</u> Compl. Exh. D).  Each of the cited letters raised issues regarding the First Loan that were expressly waived and released by the Settlement Agreement.

---

[1/]   CMMC was represented in the Settled Lawsuit and the settlement negotiations by Thomas S. Rea of the BRYAN CAVE LLP law firm.

[2/]   Upon information and belief, McCloskey either drafted or otherwise scripted the July 7, 2004, August 12, 2004, and December 15, 2004, letters.

McCloskey was personally aware that CHF was represented by counsel with respect to the First Loan, the Settled Lawsuit and the Settlement Agreement by virtue of, among other things, his having represented the Higgins in the Settled Lawsuit, his having negotiated the Settlement Agreement and his attendance at, and participation in the Closing.

On October 5, 2005, the Higgins, by and through their attorney, McCloskey, initiated the instant lawsuit in the St. Louis County Circuit Court (the "Second Lawsuit") despite their knowing waiver and release of the subject matter of substantially all of the claims asserted therein.  The Higgins assert three counts: (i) Violation of Real Estate Settlement Procedures, (ii) Breach of Contract, and (iii) Accounting.  CHF timely removed the Second Lawsuit to this Court on November 4, 2005.  A review of the allegations makes clear that in the Second Lawsuit, the Higgins primarily complain of alleged improprieties with respect to the servicing of the First Loan and of CHF's supposed failure to respond to inquiries relating to the same.

On November 11, 2005, CHF filed its Answer, Affirmative Defenses, Additional Defenses, and Counterclaim in the Second Lawsuit.  The Settlement Agreement, its terms, and the parties' intent in entering into the Settlement Agreement are central to CHF's defenses.  CHF asserts four counts against the Higgins in its Counterclaim: (i) Breach of Contract (Settlement Agreement); (ii) Breach of the Covenant of Good Faith and Fair Dealing (Settlement Agreement); (iii) Fraudulent Misrepresentation Settlement Agreement); and (iv) Breach of Contract (Deeds of Trust and Promissory Notes).

## ARGUMENT

**A.     Disqualification is Appropriate Due To McCloskey's Violation Of Missouri Rule Of Professional Conduct 4-4.2.**

McCloskey should be disqualified for contacting a party he knew to be represented by legal counsel with respect to the very subject of his communication.  Missouri Rule of

Professional Conduct 4-4.2 states: "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

Here, McCloskey violated Rule 4-4.2 by his direct contacts with CHF and also by indirect contacts with CHF through the Higgins, which, on information and belief, were prompted by McCloskey.  As is discussed above, just days after the Closing and execution of the Settlement Agreement, McCloskey mailed a July 7, 2004, letter to CHF.  The letter was signed by Marianna Higgins, but, upon information and belief, it was prepared by McCloskey.  McCloskey actually sent the July 7, 2004, letter to CHF on the Higgins' behalf.  (<u>See</u> Exh. A).  Similarly, the Higgins sent subsequent letters to CHF on August 12, 2004, and December 15, 2004.  McCloskey himself signed a letter dated February 4, 2005, directed to CHF.  None of the letters, despite pertaining to the First Loan, was directed to CHF's counsel.  Rather, each was sent directly to CHF at various corporate offices.  The letters were a pretext for resurrecting litigation claims which had been conclusively and unequivocally resolved by the Settlement Agreement.  McCloskey presumably chose to violate ethical canons because he was aware that his chances of <u>creating</u> purported RESPA violations would be substantially lessened had he complied with the ethical rules and corresponded with CHF's legal counsel.  (Of course, CHF disagrees not only with McCloskey's unethical tactics, but also with his interpretation of RESPA and the efficacy of the ostensible "notices.").

Clearly, McCloskey's direct communications with CHF in connection with the First Loan violate Rule 4-4.2.  He communicated with represented parties without consent of counsel.  A violation of Rule 4-4.2 is proper grounds for disqualification of plaintiff's counsel.  <u>See</u>, e.g.,

Weeks v. Indep. Sch. Dist., 230 F.3d 1201, 1211 (10th Cir. 2000) (holding that "disqualification may be ordered as a remedy for a violation of Rule 4.2"); Lammon v. Lammon, 688 So.2d 836, 838 (Ala App. 1996) ("common sense supports the trial court's disqualification of an attorney who may have violated the Rules of Professional Conduct"); Hammond v. City of Junction City, Kansas, 167 F. Supp. 2d 1271, 1289 (D. Kan. 2001) ("although Plaintiff … has a strong interest in being represented by his present counsel, Defendants have an even stronger interest in preventing managerial employees such as Mr. Hope from divulging attorney-client privileged information to adverse counsel and in preventing adverse counsel from obtaining potentially damaging statements from such employees"); Faison v. Thornton, 863 F. Supp. 1204, 1216 (D. Nev. 1993) (in disqualifying counsel, court stated "attorneys are officers of the court and have a duty to maintain the integrity of the legal profession"); Papanicolaou v. Chase Manhattan Bank, 720 F. Supp. 1080, 1083 (S.D.N.Y. 1989) (court "should disqualify the offending counsel when the integrity of the adversarial process is at stake"); Shoney's Inc. v. Lewis, 875 S.W.2d 514 (Ky. 1994) (same); Shelton v. Hess, 599 F.Supp. 905, 911 (S.D. Tex. 1984) ("…ends of justice are most appropriately served by disqualifying [counsel] from participating further in this lawsuit").

McCloskey's indirect communications with CHF through the Higgins (who, upon information and belief, were acting pursuant to McCloskey's instructions) are also violative of Rule 4-4.2.  See, e.g., Blanchard v. Edgemark Fin. Corp., 1998 WL 988958, at *20 (N.D. Ill. 1998) ("This court cannot permit an attorney to do indirectly through a third person what he cannot do directly under the Illinois Code of Professional Conduct"); Larry James Oldsmobile v. Gen. Motors Corp., 175 F.R.D. 234, 245 (N.D. Miss. 1997) ("an attorney may not do through a third person what he may not do himself"); Goldberg v. Whitehead, 713 A.2d 204, 207 (R.I.

1998) (court noted that attorneys, agents, and representatives are prohibited from directly contacting opposing parties represented by counsel).

As a result of McCloskey's ethical transgressions, CHF has been substantially prejudiced. CHF has been forced to respond to the Higgins' Complaint, which is based <u>entirely</u> on these prohibited communications with CHF. Absent the improper communications, plaintiffs have no claim.

McCloskey has compromised the integrity of the adversarial process. He has failed to abide by the Missouri Rules of Professional Conduct. He, accordingly, should be disqualified from further participation in this lawsuit.

**B.     Alternatively McCloskey Should Be Disqualified Because He Is A Material Fact Witness.**

Missouri Rule of Professional Conduct 4-3.7(a) states: "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client."

McCloskey is the <u>only</u> potential witness on the Higgins' side of this case who could possibly testify regarding the settlement negotiations, the drafting of the Settlement Agreement and the Closing. The scope and the intent of the Settlement Agreement are squarely at issue by operation of CHF's defenses to Higgins' claims and by virtue of CHF's counterclaims against the Higgins. The commentary to Rule 4-3.7 states that "it is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness." That is exactly the case at bar. McCloskey will certainly be deposed and will be a witness at trial.

Disqualification is proper.  No discovery has been taken in this case, nor has a Rule 16 scheduling conference been held.  Replacing McCloskey at this early juncture will not work a substantial hardship on the Higgins.  See State ex rel. Wallace v. Munton, 989 S.W.2d 641, 647 (Mo. App. 1999) ("the timeliness of the objection should be taken into consideration in considering the hardship to the client").

## CONCLUSION

Douglas McCloskey should be disqualified as a sanction for his violation of Missouri Rule of Professional Conduct 4-4.2. Furthermore, he must be disqualified as, under Missouri Rule of Professional Conduct 4-3.7, he will be a fact witness at trial. Accordingly, CHF respectfully requests that Douglas McCloskey be disqualified from further participation in this lawsuit, and for such other relief this Court deems appropriate.

    Respectfully submitted,

    BRYAN CAVE LLP

    By: /s/David M. Fedder
    David M. Fedder #27188
    Thomas S. Rea #116628
    One Metropolitan Square
    211 North Broadway, Suite 3600
    St. Louis, Missouri 63102-2750
    (314) 259-2000
    (314) 259-2020 (fax)

    *Attorneys for Chase Home Finance LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following on this 18th day of November, 2005:

    Doug McCloskey
    McCloskey Law Firm
    12015 Manchester Road
    Suite 45, Lower Level
    St. Louis, Missouri 63131
    *Attorney for Robert D. and Marianna Higgins*

    /s/David M. Fedder